FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ZACHORY K.,[1]

              Plaintiff,

     v.

LELAND DUDEK, Acting
Commissioner of Social Security,

              Defendant.

No.  4:24-cv-05145-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR PAYMENT OF BENEFITS**

      Due to epilepsy, carpal tunnel syndrome, disc disease, major depressive disorder, and anxiety, Plaintiff Zachory K. claims he is unable to work fulltime and applied for social-security benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

medical advisor, Dr. Porchia, as well as the consultative examiners, Dr. Dyck, Dr. Jones and PA-C Brown; erred in her step-three determination; and erred in failing to conduct an adequate analysis at step five. As is explained below, the ALJ erred in her evaluation of Dr. Porchia's opinion that Plaintiff equaled Listing 12.06. This matter is remanded for payment of benefits.

## I.    Background

In April 2020, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability beginning January 1, 2018, based on the physical and mental impairments noted above.[2] Plaintiff's claims were denied at the initial and reconsideration levels.[3]

After the agency denied Plaintiff benefits, ALJ Lori Freund held a telephone hearing in January 2023, at which two medical experts, Jerry Seligman, MD, and Tania Porchia, PsyD, appeared but at which only Dr. Porchia testified.[4] Plaintiff failed to appear for the hearing

---

[2] AR 270-272, 273-287, 288-296.

[3] AR 152-160, 163-169, 170-176.

[4] AR 41-58.

although he had been sent a Notice of Hearing at his last known address, but his attorney attended.[5] In July 2023, ALJ Freund held a supplemental telephone hearing and a vocational expert appeared and testified.[6] Plaintiff did not attend the hearing although he had been sent a Notice of Hearing but his attorney appeared.[7]

After the hearing, the ALJ issued a decision denying benefits.[8] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[9] As to medical opinions: the ALJ found:

- The reviewing testimony of Tonia Porchia, PsyD, to be partially persuasive.

---

[5] *Id.*

[6] AR 59-70.

[7] *Id.*

[8] AR 14-38. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation determines whether a claimant is disabled.

[9] AR 24-26.

- The opinions of consultative examiner Dennis Dyck, PhD, to be persuasive to the extent they are consistent with the ALJ's formulated RFC.

- The opinions of consultative examiner Nicolas Jones, PhD, to be not persuasive.

- The opinions of consultative examiner Anjelica Brown, PA-C, to be not persuasive.

- The opinions of state agency evaluators Rita Flanagan, PhD, and Andrew Forsyth, PhD, to be persuasive.

- The opinions of state agency evaluators Alnoor Virji, MD, and Norman Staley, MD, to be persuasive.[10]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2020.

---

[10] NP Lara stated that she was unable to render a medical opinion without consulting her supervising physician. The ALJ treated her doing so as a statement of nondisability.

- Step one: Plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: seizure disorder, unspecified anxiety disorder, and polysubstance use disorder. The ALJ also found Plaintiff's cervicalgia and history of carpal tunnel status post release to be nonsevere.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered Listings 11.02 and 12.06.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

  > [Plaintiff] should avoid climbing ladders, ropes, and scaffolds, unprotected heights, working around large bodies of water, and operating moving machinery including an automobile. He could frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and reach overhead bilaterally. He should avoid moderate exposure to hazards and excessive vibrations. He would be limited to simple and repetitive tasks with only occasional changes in a work setting. He would need to avoid working directly with the general

public and could have occasional interaction with co-workers.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as routing clerk (DOT 222.687-014), night cleaner (DOT 323.687-014), and small products assembler (DOT 706.684-022).[11]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[12]

---

[11] AR 20-31.

[12] AR 267.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[13] and such error impacted the nondisability determination.[14] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]

---

[13] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

[14] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[15] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence

# III.   Analysis

Plaintiff argues the ALJ erred in her evaluation of the medical opinion of the medical expert, Dr. Porchia, as well as the opinions of the consultative examiners, Dr. Dyck, Dr. Jones, and PA-C Brown; failed to conduct an adequate evaluation at step three and erred in her analysis at step five.  The Commissioner argues that the ALJ properly evaluated the opinions of the medical expert and the consultative examiners, properly found that Plaintiff did not meet or equal Listing 12.06, and properly evaluated Plaintiff's ability to engage in available jobs at step five.  The Court disagrees with the Commissioner. As is explained below, the ALJ's analysis of the medical opinions in general, and Dr. Porchia's specifically, contains consequential error.

---

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## A.     Medical Opinions: Plaintiff established consequential error.

Plaintiff argues the ALJ failed to properly consider the opinions of Dr. Porchia, Dr. Dyck, Dr. Jones, and PA-C Brown. As discussed below, the ALJ erred as to her evaluation of the opinions of Dr. Porchia.[16]

### 1.     Standard

An ALJ must consider and evaluate the persuasiveness of all medical opinions.[17] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[18] The factors for evaluating the persuasiveness of medical opinions include, but are not

---

[16] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404.1520c(a)–(c); 416.920c(a)-(c), *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[17] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[18] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

limited to, supportability, consistency, relationship with the claimant, and specialization.[19] Supportability and consistency are the most important factors, and the ALJ is required to explain how both of these factors were considered:[20]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

---

[19] *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). When assessing the medical source's relationship with the claimant, the ALJ is to consider the treatment length, frequency, purpose, and extent, and whether an examination was conducted. The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements.

[20] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[21]

Typically, the ALJ may, but is not required to, explain how the other factors were considered.[22]

### 2. Testimony

Because the Court focuses its evaluation on the ALJ's evaluation of Dr. Porchia's testimony, only the relevant testimony is referenced.

#### a. *Plaintiff's Written Testimony*

---

[21] *Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(5).

[22] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

On April 13, 2020, Plaintiff completed an Adult Function Report.[23] He reported that he lived in a house with family.[24] He wrote that his condition limits his ability to work because it is dangerous for him to stand or sit near sharp objects or a hard floor because he might suffer a head injury during a grand mal seizure.[25]

Plaintiff described his daily activity as waking and waiting to make sure he does not feel a seizure coming, taking his medication and eating breakfast and then watching TV or reading until dinner.[26] Plaintiff said that he does not care for anyone and has a dog that is cared for by his father.[27] He said that he used to be able to do physical activities and learn new things and that he at times has seizures while asleep.[28] He said that after a seizure he needs to be reminded to take

---

[23] AR 381-388.

[24] AR 381.

[25] *Id.*

[26] AR 382.

[27] *Id.*

[28] *Id.*

care of personal needs and that his father had to remind him to take his medication because of problems with his memory.[29]

Plaintiff said he can prepare his own meals and that he will try to do cleaning and laundry if he has been seizure free.[30] Plaintiff wrote that he tries to go outside daily but that he walks because he cannot drive car due to his epilepsy.[31] He said that he shops for food twice a month and it takes about 2 hours, and that he is able to handle money and pay bills but that he has difficulty remembering amounts.[32] Plaintiff said he reads and watches TV daily and that he likes to fish but only goes rarely because he goes after he has not had a seizure for a while.[33] He said that he spends time with his father, who he lives with daily, and talks to his mother by phone once a week.[34] Plaintiff

---

[29] AR 383.

[30] *Id.*

[31] AR 384.

[32] AR 384-385.

[33] AR 385.

[34] *Id.*

said he goes out to the grocery store weekly and the doctor once a month, and that he needs someone to go with him.[35]

Plaintiff stated that his social activities have been taken away because of a high risk of grand mal seizures.[36] He reported that his conditions affect the following: talking, hearing, seeing, memory, completing tasks, concentration, understanding, and following directions.[37] He said that he speaks slowly, his hearing is getting worse, his memory is bad and that he is only able to concentrate and understand things when he has been seizure-free.[38] He reported that he is left-handed, that he can walk for a quarter mile before stopping 15 minutes, that he can pay attention for up to 10 minutes, and that he can follow directions if given enough time and given the directions multiple times.[39] Plaintiff said that he gets along with authority figures

---

[35] *Id.*

[36] AR 386.

[37] *Id.*

[38] *Id.*

[39] *Id.*

well and has never been fired for problems getting along with others, that he will have a seizure if he has too much stress, and that he can handle changes in routine if given enough time.[40] He said that he was taking the medication Lamotrigine ER (a/k/a Lamictal) and that he suffered side effects of memory loss, drowsiness, and dizziness.[41]

### b. _Dr. Porchia's Testimony_

On January 11, 2023, Tonia Porchia, PsyD, appeared via telephone to testify as a medical expert at a hearing before ALJ Lori Freund at the request of the Commissioner.[42] Dr. Porchia testified that she had no prior contact with Plaintiff or his attorney and that she would testify impartially despite the fact that the Social Security Administration was paying her fee.[43] Dr. Porchia testified that she had reviewed all the medical records in evidence up to and including 15F.[44]

---

[40] AR 387.

[41] AR 388.

[42] AR 41-58.

[43] AR 51-52.

[44] AR 52.

Dr. Porchia testified that Plaintiff has epilepsy as well as specified depressive and anxiety disorders, as well as methamphetamine abuse and opiate use that might or might not have been in remission.[45] Dr. Porchia testified that Plaintiff's case was complex because Plaintiff had a seizure disorder and that it was a trigger for anxiety and depressive symptoms.[46]

Dr. Porchia testified that based upon what was in the record, including the consultative examination reports, she opined that Plaintiff's mental impairments equal Listing 12.06 because the symptoms are often triggered by the seizure disorder.[47] Dr. Porchia stated that this was supported by the findings of the psyche evaluations performed in April 2021 and July 2020.[48] She opined that Plaintiff has memory problems and difficulty concentrating due to the anxiety symptoms that accompany his epilepsy and stated that he had

---

[45] AR 53.

[46] *Id.*

[47] *Id.*

[48] *Id.*

depressive symptoms as well but the basis for the limitations was the anxiety, so the difficulty concentrating would exist as long as the seizures continued.[49] She also testified that those limitations would be absent any drug or alcohol abuse, so Plaintiff's prior substance use is not material.[50]

Dr. Porchia explained that the limitations she opined were consistent with the medical evaluation located at Exhibit 12F.[51] Dr. Porchia said that even though there were medical records outstanding the existing records were pretty clear in showing, starting with Exhibit 2F, that Plaintiff's seizures were triggered by a head injury he sustained in a dirt bike accident in 2005 and that a seizure disorder of this magnitude present for so long would not fade away.[52] Dr. Porchia said that the records showed that Plaintiff was not compliant with

---

[49] AR 53-54.

[50] AR 54.

[51] *Id.*

[52] *Id.*

medication but that she believed that Plaintiff's symptoms impact his ability to remember to take his medication and stay compliant.[53]

Dr. Porchia addressed the A and B criteria, noting that Plaintiff had a number of B criteria, such as being easily fatigued, difficulty concentrating, irritability, and difficulty with sleep.[54]  Dr. Porchia opined that Plaintiff would have a mild limitation in the ability to understand, remember, and apply information due to short term memory issues.[55]  She opined that Plaintiff would have a moderate limitation in the ability to interact with others due to anxiety.[56] Dr. Porchia opined that Plaintiff would have a marked limitation in the ability to concentrate, persist, and maintain pace, and the ability to adapt or manage oneself because the seizures are unpredictable and

---

[53] AR 54-55.

[54] AR 55.

[55] *Id.*

[56] *Id.*

they trigger anxiety, which affects the ability to maintain pace or manage stressors.[57]

Dr. Porchia testified that she did not see any C criteria. And that the limitations she opined to had existed since at least January 2018.[58]

3.     Relevant Medical Records

a.     *Dr. Dyck*

On July 10, 2020, Plaintiff was examined by Dennis Dyck, PhD, at the request of the Commissioner.[59] Plaintiff reported complaints of anxiety, depression, memory difficulty, insomnia, epilepsy, left wrist injury, and back injury, and that he experienced head trauma in a motor vehicle accident.[60] Dr. Dyck indicated that he reviewed medical records from Kadlec Regional Medical Center, Sacred Heart Medical Center, and Eastern Washington Epilepsy Center.[61]

---

[57] *Id.*

[58] AR 56.

[59] AR 985-989.

[60] AR 985.

[61] *Id.*

Plaintiff reported that he first experienced seizures at age 13, that he overdosed in July 2018 and that he went to the ER in May 2018 but had never been hospitalized psychiatrically.[62] Plaintiff reported he was taking Zoloft and was sleeping better and less depressed, that his anxiety is increased by being around others and by seizures, that he had an opioid addiction that he quit in July 2019 but has had relapses, and that he had a severe head injury and back injury when struck by a car on his bike and had several back surgeries.[63] Plaintiff reported that he last worked in a restoration business but was laid off due to his epilepsy, that he is single and lives with his father, that he completed to 10th grade and has a GED, and that he is currently taking Lamictal ER.[64]

On mental status examination, Dr. Dyck found Plaintiff had proper hygiene, did not appear to be malingering, had normal speech and thought process, was oriented, was able to follow a three-step

---

[62] AR 985-986.

[63] AR 986.

[64] Id.

command, had difficulty with abstract thinking, and had reasonably good insight and judgment.[65] Dr. Dyck noted that Plaintiff appeared to be capable of performing activities such as cooking, cleaning, and bathing, but questioned his own ability to handle funds; was able to concentrate to go fishing but does little reading; is partially self-isolating and does not attend social events; and has a recurring problem with deterioration or decompensation in the workplace due to seizures.[66]

Dr. Dyck diagnosed Plaintiff with adjustment disorder with anxiety and depression due to a chronic medical condition, with moderate to severe symptoms, and opined that his prognosis was guarded.[67] Dr. Dyck opined as to the following functional assessment:

> [Plaintiff] appears to have the clear ability to reason and understand. He does have some adaptation skills. Remote memory is intact. Recent and immediate memory are intact. Sustained concentration and persistence are adequate based on the brief concentration tasks of this evaluation. The claimant does describe an ability to follow through on tasks

---

[65] AR 987-988.

[66] AR 988.

[67] *Id.*

in his home environment. He does describe interpersonal challenges in his personal life and in prior work environments as a result of his anxiety and epilepsy. His ability to interact with co-workers and the public is likely moderately impaired. Due to his anxiety and epilepsy his ability to maintain regular attendance in the workplace is between moderately and markedly impaired. His ability to complete a normal work day or work week without interruption from his anxiety and epilepsy is likely markedly impaired. His ability to deal with the usual stress encountered in the workplace is markedly impaired if it involves being around other individuals. He appears to have significant physical limitations that would be better assessed by a medical provider.[68]

### b.    _Dr. Jones_

On April 8, 2021, Plaintiff was examined by Nikolas Jones, PhD, at the request of the Commissioner.[69] Plaintiff reported that he had been diagnosed with epilepsy at age 13 after a dirt bike accident, when he suffered a concussion and back injury and that his memory and pace had gotten worse since.[70] Plaintiff also reported memory fog, carpal tunnel syndrome in his left dominant hand, and that he is missing

---

[68] _Id._

[69] AR 1018-1021.

[70] AR 1018.

discs in his spine at C6-7 as a result of the dirt bike accident.[71] Plaintiff reported that he thinks and performs tasks slowly and that he has lost jobs because of his slow pace.[72] Plaintiff reported that he used opiates for 6-8 years but had stopped in 2018 and now took methadone, as well as Trazadone and Lamictal ER.[73]

Plaintiff reported that he had past arrests for harassment, theft, and drug possession but had none since 2017.[74] Plaintiff reported that he had no friends, that he failed high school after the accident but later got a GED, and that his longest job was in 2017 for one year, but he lost it due to a seizure and slow pace.[75] Plaintiff said that he spends his days watching television, playing with his dog, doing small chores, and heating ready-made meals.[76]

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] AR 1019.

[75] *Id.*

[76] *Id.*

DISPOSITIVE ORDER - 23

On mental status examination Plaintiff appeared disheveled, had at times a very slow rate of speech, had poor insight and fair judgment, had calm mood, was not fully oriented, had a good fund of knowledge, had good abstract reasoning, and had good practical reasoning.[77] Dr. Jones found that Plaintiff struggled with poor social functioning, tends to isolate, and has below average conversation skills.[78] Dr. Jones found that Plaintiff is unable to engage in and sustain activities for appropriate lengths of time, had a below average pace, and did not persist in difficult activities.[79] Dr. Jones diagnosed insomnia disorder; major depressive disorder, recurrent, moderate; generalized anxiety disorder; and rule-out mild neurocognitive disorder due to TBI.[80]

Dr. Jones opined that Plaintiff would have a low-to-moderate risk of decompensation.[81] Dr. Jones opined the following:

---

[77] *Id.*

[78] AR 1020.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[Plaintiff] is a 30-year-old male with a history of a severe MVA as a teenager and persistent language, memory, processing speed, and behavior problems since that time. Additionally, he exhibits symptoms of moderate recurrent Major Depressive Disorder and Generalized Anxiety Disorder. His symptoms together with his task pace and work history make it more likely than not that [Plaintiff] with have struggles to be successful in a work environment. [Plaintiff] will likely experience a normal level of absenteeism but performance pace will continue to be well below average. As such, [Plaintiff] will likely struggle to obtain and maintain employment. It is recommended that [Plaintiff] seek individual counseling on an ongoing basis. Overall prognosis is fair. It is recommended that he be evaluated for neurocognitive deficits due to TBI. All physical symptoms are referred to a medical provider.[82]

4.    <u>The ALJ's consideration of Dr. Porchia's opinions</u>

The ALJ summarized Dr. Porchia's testimony in great detail.[83]

The ALJ then went on to state:

The undersigned finds the testimony of Dr. Porchia partially persuasive. Dr. Porchia reviewed the entirety of the medical record and is familiar with the Social Security Act, Listings, and Regulations but her testimony is somewhat consistent with the medical evidence, with the exception that she testified the claimant has depressive and anxiety symptoms which she found related to his epilepsy as well as methamphetamine abuse and opioid use in the past.

---

[82] *Id.*

[83] AR 26.

1

2

3

4

5

6

7

8

9

10

She stated this was a complex case due to the claimant's seizure disorder triggering his depressive and anxiety symptoms. She found the claimant equaled 12.06 because his depression is triggered by his seizure disorder, but this opinion is not supported by the record. The claimant has not been compliant with medication. (Ex. 8F/7, 9). Additionally, during the psychological consultative examination with Dennis Dyck, Ph.D. in July of 2020, the claimant was noted to have adaptation skills and adequate sustained concentration and persistence. The claimant reported he was able to concentrate and sustain with several activities. (Ex. 6F/4). The claimant was able to perform serial sevens and could spell the word "world" correctly in both the forward and backward direction. Additionally, he was able to identify three out of three objects during a recent memory test. (Ex. 6F/3).[84]

11

12

13

14

15

16

The ALJ discounted Dr. Porchia's opinions because 1) the ALJ found the opinions were not supported by the record, 2) Plaintiff had been noncompliant with his medication, and 3) during a consultative examination with Dr. Dyck Plaintiff was noted to have adaptation skills and the adequate concentration and persistence.[85]

17

18

    a.     *The ALJ failed to meaningfully analyze whether*

         *Dr. Porchia's opinion was supported by the evidence.*

19

20

21

[84] AR 26-27.

22

[85] *Id.*

23

1
2
3
4
5

It is the duty of the ALJ to explain their consideration of two factors: supportability and consistency.[86]  While the ALJ made some attempt to address the consistency factor, she did not address the supportability factor in any meaningful way.

6
7
8
9
10
11
12
13

Dr. Porchia explained that she based her opinions on the findings of the consultative examinations of Dr. Dyck and Dr. Jones.  At no time, did the ALJ address the finding of Dr. Jones on the mental status examination.  Moreover, the ALJ did not properly address the finding of Dr. Dyck on the mental status examination as a whole and instead referenced only the limited portion of Dr. Dyck's findings that supported her position.

14
15
16
17
18
19

The ALJ failed to acknowledge the findings of marked limitations, which were opined to by both Dr. Jones and Dr. Dyck.  Instead, the ALJ only addressed the limited findings in which Dr. Dyck opined to milder limitations.  Moreover, she took those milder limitations out of context. Context is crucial as "treatment records

20
21
22
23

---

[86] 20 C.F.R. §§ 404.1520c(a), 416.960c(a)..

must be viewed in light of the overall diagnostic record."[87] An ALJ may not cherry pick evidence to support a conclusion while ignoring other competent evidence in the record.[88] The ALJ did so in this matter.

Thus, the ALJ failed to adequately articulate any of her findings regarding the supportability factor of 20 C.F.R. §§ 404.1520c, 416.920(c) as mandated by the regulation.

> ### b.    The ALJ's finding that Dr. Porchia's opinions are inconsistent with the record is not supported by substantial evidence.

Whether a medical opinion is consistent with the longitudinal record—including Plaintiff's reported symptoms or the medical findings

---

[87] *Ghanim v Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

[88] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness …, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

and observations—is a factor the ALJ must consider.[89] The consistency inquiry is not simply a comparison of the opinions given by medical sources. It is a comparison of the medical opinion in question to "*evidence* from other medical sources and nonmedical sources."[90]

The ALJ articulated two reasons why she found Dr. Porchia's opinions to be inconsistent with the overall record: 1) Plaintiff's was noncompliant with his medication, and 2) they were inconsistent with Dr. Dyck's finding on mental status examination.[91] The Court concludes that the ALJ's reasoning that Dr. Porchia's opinions are inconsistent with the overall record is flawed.

First, as to the cited evidence that Plaintiff was not complaint with medication, the ALJ is in error. The ALJ cited to two pages in the entire record in which she states Plaintiff was noted to be noncompliant, located at Exhibit 8F, pages 7 and 9. But those records do not state exactly what the ALJ says they state.

---

[89] 20 C.F.R. § 404.1520c(b)(2).

[90] 20 C.F.R. § 404.1520c(c)(1) (emphasis added).

[91] AR 26-2732.

At Exhibit 8F, pages 6-7 are a portion of a treatment note from an office visit with Dr. Nathasha Sparrow of the Eastern Washington Epilepsy Center on January 8, 2021.[92]  The record at 8F, pages 6-7 shows that in the years before quitting methamphetamine in 2019 Plaintiff was noncompliant in taking his Lamictal, but in 2019 he became compliant and thereafter only failed to take his medication on two occasions in 2020: the first instance being for 2 days when he was in pain from tooth extraction and the second being a time he was incarcerated for 3 days and did not have access to the medication.[93] Dr. Sparrow noted that with the exception of those two instances "[h]e is otherwise compliant with Lamictal."[94]At Exhibit 8F, page 9, Dr. Sparrow repeats her statement that other than those two occasions, Plaintiff was compliant with his medication.[95]

---

[92] AR 1008-1009.

[93] AR 1008-1009.

[94] AR 1009.

[95] Ar 1011.

As to the ALJ's reasoning that Dr. Porchia's opinion is inconsistent with Dr. Dyck's finding on mental status examination that Plaintiff had adaptation skills, the Court notes, as previously discussed above that the ALJ erred both in citing to only the portion of Dr. Dyck's finding that supported her conclusions and in taking the finding out of context.  It is of note that Dr. Dyck did not find that Plaintiff had "adaptation skills" but rather said he had "some adaptation skills."[96] The ALJ did not consider that Dr. Dyck went on to find that Plaintiff's ability to adapt to the usual stresses in the workplace would be markedly impaired if it involved being around others.[97]

The Court concludes that the opinions of Dr. Porchia are consistent with the opined moderate and marked limitations found by both Dr. Dyck and Dr. Jones and are supported by and consistent with the record.  The Court finds that the ALJ erred in discrediting Dr. Porchia's opinion that Plaintiff equals Listing 12.06 and remands for a payment of benefits.

---

[96] AR 987.

[97] AR 988.

**B.    Step Three (Listings): The ALJ erred.**

Because the Court has found that the ALJ erred in failing to credit Dr. Porchia's opinion that Plaintiff equals Listing 12.06, the ALJ has erred. As explained above, once credit is given to Dr. Porchia's opinion that Plaintiff equaled Listing 12.06 from at least the alleged date of onset, a remand for a calculation of benefits is warranted.

**C.    RFC: This issue is moot.**

Because the Court has remanded the case to the Commissioner for a calculation of benefits, this issue is moot.

## IV.    Conclusion

Remand for further administrative proceedings is the usual course when a harmful error occurs in the administrative proceeding, except in rare circumstances.[98] This is a rare circumstance where an award of benefits is appropriate.

---

[98] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

First, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Porchia.

Second, further administrative proceedings will offer no benefit—the record is fully developed.[99] "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."[100]

Third, when Dr. Porchia's opinions are fully credited, the regulations require a finding that Plaintiff is disabled.[101] Plaintiff is unable to sustain fulltime work.

An award of benefits is warranted

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for a calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

---

[99] *See id.*

[100] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

[101] 20 C.F.R. § 404, Part 220, Appendix 1

1    2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of April, 2025.

_____
EDWARD F. SHEA
Senior United States District Judge